## POLY-PAK CORPORATION OF AMERICA *v.*
## JOHN P. BARRETT
## (2280)

TESTO, DUPONT and BORDEN, Js.

Argued October 11—decision released December 20, 1983

*Carl E. Watt,* for the appellant (plaintiff).

*Sturges Laros* filed a brief for the appellee (defendant).

TESTO, J. This case was commenced by an individual, Carl Whiteford, doing business as Poly-Pak Corporation of America. During the course of the proceedings, the corporation, Poly-Pak Corporation of America (Poly-Pak), was substituted as the party plaintiff. Subsequently, the defendant moved to dismiss the action. The motion was granted and this appeal[1] followed.

Poly-Pak was originally incorporated in 1958 as a Delaware corporation. Sometime between 1958 and 1967, it filed with the secretary of the state of Connecticut a certificate of authority to do business. Its certificate was revoked in 1968, and in 1971 Poly-Pak was dissolved as a Delaware corporation.

Whiteford, as sole shareholder of Poly-Pak, however, continued to conduct business under the Poly-Pak corporation name. In 1972, he contacted the defendant regarding the leasing of certain property owned by the defendant in Bridgeport. Lease negotiations followed. "Poly-Pak Corporation, a Connecticut corporation" was to be the lessee, with Whiteford signing the lease as president of the corporation. Whether a lease was ever executed is in dispute; but, a monthly rent of $200 was agreed upon by the parties and the plaintiff, purportedly acting in reliance on representations that the defendant had signed a lease, moved into the subject premises.

The "lease" purportedly also granted to the lessee an option, which Whiteford, doing business as Poly-Pak, attempted to exercise in 1974. The defendant refused to recognize the option and Whiteford ceased paying rent.

Carl Whiteford, doing business as Poly-Pak Corporation of America, instituted this action, seeking to enforce the "lease" provisions allegedly granting the

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

lessee an option to purchase the property in Bridge-port. At the conclusion of the plaintiff's case in chief, the plaintiff moved, in the alternative, for permission to add a party plaintiff or to substitute a party plaintiff, in each instance the substitute or additional plaintiff to be "Poly-Pak Corporation of America, a corporation existing under the laws of the State of Connecticut." The motion to substitute was granted and the motion to add denied.

The next day, on May 15, 1981, a certificate of incorporation for the Poly-Pak Corporation of America was filed with the Connecticut secretary of the state. That same day, the defendant moved to dismiss on the ground that the substituted plaintiff was barred by General Statutes § 33-412 from maintaining the action. From the granting of the motion, an appeal was taken by the original plaintiff[2] and by the substituted plaintiff. Issues on appeal concern: (1) the trial court's denial of Whiteford's motion to add Poly-Pak as a plaintiff; (2) the dismissal of the action; and (3) an evidentiary ruling.

I

We are not persuaded that the trial court erred in denying Whiteford's motion to add Poly-Pak as a party plaintiff. Section 52-109 of the General Statutes and § 101 of the Practice Book provide: "When any action has been commenced in the name of the wrong person as plaintiff, the court may, if satisfied that it was so commenced through mistake, and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff." This court takes cognizance of the fact that the plaintiff has failed to show that it mistakenly commenced the action by naming the wrong plaintiff.

[2] On October 7, 1981, the Supreme Court granted the defendant's motion to dismiss the appeal as to the original plaintiff, Carl Whiteford.

The decision whether to grant a motion for the addition or substitution of a party to legal proceedings rests in the sound discretion of the trial court. *Lettieri* v. *American Savings Bank,* 182 Conn. 1, 13, 437 A.2d 822 (1980). In reviewing the trial court's exercise of that discretion, every reasonable presumption should be indulged in favor of its correctness; *Jacobs* v. *Goodspeed,* 180 Conn. 415, 416, 429 A.2d 915 (1980); and only if its action discloses a clear abuse of discretion is our interference warranted. *Sturman* v. *Socha,* 191 Conn. 1, 7, 463 A.2d 527 (1983).

Poly-Pak argues that in the proceedings below there was no need to specify the identity of the plaintiff [3] as long as a cause of action was established and no party would have been prejudiced by the granting of the motion to add Poly-Pak. It is true that the Practice Book liberally permits, at any stage of the proceedings, the addition or substitution of a party plaintiff; see Practice Book § 101; but a party plaintiff must be identified and have an interest in the outcome of the controversy for the court to make a complete determination of the matter. Poly-Pak was finally made a party to the action. It is, therefore, difficult to see how it was prejudiced by its failure to be originally joined. Moreover, the plaintiff made no showing that the absence of Whiteford,[4] who was not a party to the alleged lease, harms it in seeking to enforce the lease. In light of these circumstances, we cannot say that the court's refusal to permit the joinder was an abuse of discretion.

---

[3] At trial, three separate and distinct entities surfaced as possible interested parties: (1) The lease and option sought to be enforced in this action by "Poly-Pak Corporation, a Connecticut corporation," now the substituted plaintiff; (2) Poly-Pak, a Delaware corporation which in 1974 alleged through its president, Carl Whiteford, in a summary process action instituted against it by the defendant that it was the sole lessee of the subject premises; and (3) Carl Whiteford, doing business as Poly-Pak, the original plaintiff, who alleged that he was the lessee of the premises.

[4] See footnote 2, supra.

## II

The second issue raised by the plaintiff concerns the granting of the defendant's motion to dismiss because the plaintiff was barred pursuant to § 33-412 of the General Statutes from maintaining the action. Under § 33-412, a foreign corporation transacting business[5] in Connecticut cannot maintain an action in the courts of this state if it has not obtained a certificate of authority to transact business here. The plaintiff contends that since its existence as a Delaware corporation terminated in 1971, prior to any of the transactions here at issue, no foreign corporation existed to be barred by § 33-412 from access to the Connecticut courts. We do not agree.

The proscription of § 33-412 extends not only to a foreign corporation unauthorized to do business in Connecticut, but also to "any successor or assignee of such [foreign] corporation . . . ." General Statutes § 33-412 (a). Consequently, whether the plaintiff was a foreign corporation or its successor, it is nonetheless barred by the foregoing section from maintaining this action and is thus not entitled "to set the machinery of the courts in operation . . . ." See *State* v. *Nardini*, 187 Conn. 109, 112, 445 A.2d 304 (1982); *Bassett* v. *Desmond*, 140 Conn. 426, 430, 101 A.2d 294 (1953). Because the plaintiff was barred from maintaining the action, the trial court was correct in granting the defendant's motion to dismiss.[6]

---

[5] General Statutes § 33-396 sets forth which foreign corporations must obtain a certificate of authority: "No foreign corporation except an insurance or surety or indemnity company shall transact business in this state until it has procured a certificate of authority so to do from the secretary of the state . . . ."

[6] The plaintiff's arguments that it has standing under the doctrine of equitable estoppel and as a de facto corporation are without merit. See *Zoning Commission* v. *Lescynski*, 188 Conn. 724, 731, 453 A.2d 1144 (1982) (essential elements of any estoppel claim); Cross, Corporation Law in Connecticut (1972) § 3.17, p. 110 n.5 (essential elements of a de facto claim).

## III

The final claim pursued by the plaintiff is that the trial court erred in not allowing the plaintiff to present evidence regarding its corporate status after it had rested its case in chief. During the course of oral arguments on the defendant's motion to dismiss, the plaintiff requested permission to prove the current status of Poly-Pak.[7] This request to open its case and present additional evidence is within the sound discretion of the trial court. *State* v. *Holmquist*, 173 Conn. 140, 152, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977). If the trial court believes that by inadvertence or mistake there was a failure to introduce available evidence upon a material issue in the case, such that in its absence there is serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case is decided. *State* v. *Holmquist,* supra; *Hauser* v. *Fairfield,* 126 Conn. 240, 242, 10 A.2d 689 (1940).

In the present case, Poly-Pak could have at any time during the course of the trial filed a certificate of authority with the secretary of this state. Failure to do so until the defendant moved to dismiss the action does not constitute inadvertence or mistake by Poly-Pak. If the court had granted the plaintiff's request, it would clearly have resulted in prejudice to the defendant. We find that the trial court did not abuse its discretion in not allowing the plaintiff to present this additional evidence.

There is no error.

In this opinion the other judges concurred.

---

[7] As noted, supra, a certificate of incorporation for the Poly-Pak Corporation of America was filed on May 15, 1981, with the Connecticut secretary of the state.