## NORTHEAST SAVINGS, F.A. *v.*
## JACK S. SCHERBAN ET AL.
## (AC 16705)

Foti, Schaller and Hennessy, Js.

Argued September 18—officially released December 2, 1997

*M. Dean Montgomery,* for the appellants (named defendant et al.).

*Elaine M. Scanlon,* for the appellee (plaintiff).

*Opinion*

HENNESSY, J. The defendants Jack Scherban and Andrea Scherban[1] appeal from the judgment of strict foreclosure rendered by the trial court for the plaintiff, Northeast Savings. The defendants raise the following issues on appeal: (1) the plaintiff failed to provide sufficient notice of the acceleration of the debt; (2) the trial court improperly held a supplemental hearing and issued a judgment more than 120 days after the original

---

[1] Also named as a defendant was NAB Asset Venture, a subsequent encumbrancer. We refer in this opinion to Jack Scherban and Andrea Scherban as the defendants.

close of evidence; (3) the plaintiff violated General Statutes § 49-6d; and (4) the plaintiff violated the Truth in Lending Act, 15 U.S.C. § 1601 et seq. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. On May 18, 1990, the defendants signed a $400,000 promissory note payable to the plaintiff secured with a mortgage deed executed by Andrea Scherban, owner of the couple's residence.

On June 1, 1993, the plaintiff sent the defendants a letter notifying them that the note was in default and that failure to cure the deficiency within thirty days might result in the acceleration of the debt. On July 2, 1993, the plaintiff sent the defendants a second letter stating that the note continued to be in default and giving them thirty days to cure the default. On July 22, 1993, the defendants were again notified that their account was in default and that, unless they remitted the full amount past due by August 2, 1993, foreclosure proceedings would commence. On September 27, 1993, the plaintiff began this foreclosure action.

I

The defendants' first claim on appeal is that the plaintiff failed to provide sufficient notice of the acceleration of the debt. The defendants claim that as a result of the plaintiff's failure to notify them properly, a condition precedent to a foreclosure action, the judgment of foreclosure is void. We disagree.

In essence, the defendants' first claim is a dispute over the meaning of the notice provisions contained in the note. The operative agreement between the parties provided that "the lender shall give notice to borrower prior to acceleration . . . which shall specify the default, the action required to cure the default, a date not less than thirty days within which to cure the default

and that failure to cure the default may result in acceleration. . . ." The trial court found that under that provision, the parties "agreed that . . . the mortgagee was obliged to notify the defendants as borrowers that the lender was not providing more than thirty days from the date of its notice for the defendants to cure the default; or otherwise the lending bank might exercise its option to accelerate."

The use of "shall" in the note creates a condition precedent that must be satisfied prior to foreclosure. See *Citicorp Mortgage, Inc.* v. *Porto*, 41 Conn. App. 598, 602, 677 A.2d 10 (1996). The condition precedent under the note is the notice of the default, and it is clear that the defendants were timely notified of the default. Furthermore, the first notice of default stated that failure to cure might result in an acceleration of the debt, language similar to that contained within the note itself. We conclude that the note did not require that notice regarding the acceleration of the debt be a document separate from the notice of default.

We further conclude that the notice of default satisfied the notice requirement contained in the note because it notified the defendants of the default and the possibility of acceleration. The note provision required only that the plaintiff give notice of the default and notice that failure to cure the default "may result in acceleration." Therefore, the contract provisions regarding notice were properly satisfied and the judgment is proper.

II

The defendants' next two claims on appeal are interrelated. First, the defendants claim that the trial court abused its discretion in scheduling a supplemental hearing. Second, the defendants claim that the trial court's judgment was issued more than 120 days after the close of evidence and, therefore, the court lacked subject

matter jurisdiction to determine the merits of the case. We disagree with both claims.

The following additional facts are necessary to our resolution of these issues. A hearing was held before the trial court on July 11, 1995, at which evidence of the debt and special defenses were presented by the plaintiff and defendants, respectively. Both parties were ordered by the court to file simultaneous posttrial briefs. The defendants' posttrial brief contained a new argument, not presented at trial, alleging that the plaintiff had failed to notify them properly of the original default.[2] In order to respond, the plaintiff requested permission to introduce the letters as exhibits. The defendants objected, asserting that they had never received these documents and requesting that "the court reopen the trial of this matter so the Plaintiff can offer said document in proper form, subject to Defendants' right of cross-examination." The defendants' request for a hearing was granted.

## A

A hearing was held on June 6, 1996, at which time the plaintiff introduced the letters into evidence through a bank manager. The defendants conducted extensive cross-examination of the witness. No additional evidence was presented by either side. The last briefs in this case were filed on June 26, 1996. On September 25, 1996, the trial court rendered judgment of strict foreclosure.

The first issue before us is whether the trial court abused its discretion when it reopened the evidentiary phase of the proceedings. " 'In any ordinary situation if a trial court feels that, by inadvertence or mistake, there has been a failure to introduce available evidence

---

[2] The defendants did not make any discovery requests of the plaintiff prior to or during the trial.

upon a material issue in the case of such a nature that in its absence there is a serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case has been decided.' *Hauser* v. *Fairfield*, 126 Conn. 240, 242, 10 A.2d 689 (1940). 'Whether or not a trial court will permit further evidence to be offered after the close of testimony in a case is a matter resting in the sound discretion of the court.' *Toffolon* v. *Avon*, 173 Conn. 525, 537, 378 A.2d 580 (1977)." *Wood* v. *Bridgeport*, 216 Conn. 604, 606, 583 A.2d 124 (1990); *State* v. *Holmquist*, 173 Conn. 140, 152, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977); *Poly-Pak Corp. of America* v. *Barrett*, 1 Conn. App. 99, 104, 468 A.2d 1260 (1983). "The term discretion means a legal discretion to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (Internal quotation marks omitted.) *Buckley* v. *Warden*, 181 Conn. 286, 290, 435 A.2d 348 (1980).

Here, the plaintiff's failure to include the correspondence in the bank file was a mistake. Further, the plaintiff could have been substantially prejudiced if it had been prevented from addressing the notice issue raised in the defendants' posttrial brief. We conclude that because the defendants raised this issue, the trial court properly exercised its discretion to allow the plaintiff to introduce the additional evidence. See *Farmers & Mechanics Savings Bank* v. *Sullivan*, 216 Conn. 341, 352–54, 579 A.2d 1054 (1990) (foreclosure proceedings equitable).

## B

The defendants next claim that the judgment was rendered in violation of General Statutes (Rev. to 1993) § 51-183b.[3] The defendants contend that for purposes

[3] General Statutes (Rev. to 1993) § 51-183b provides: "Any judge of the Superior Court and any state trial referee who has the power to render

of § 51-183b, the operative completion date in this civil case was January 16, 1996, thereby making the September 25, 1996 ruling more than 120 days from the close of evidence. We disagree.

Section 51-183b "applies to all civil causes, and unless the parties waive its provisions, a trial court must render its decision within 120 days of the completion of the trial, which ends with the filing of the briefs when requested. *Frank* v. *Streeter*, [192 Conn. 601, 472 A.2d 1281 (1984)]." *Sanchez* v. *Prestia*, 29 Conn. App. 157, 161, 612 A.2d 824, cert. denied, 224 Conn. 913, 617 A.2d 167 (1992). "In determining that 'the completion date' includes the filing of briefs, the trial court held that briefing of the legal issues was a component of the judicial gathering of the materials necessary to a well-reasoned decision. In related contexts, 'completion' has been held to encompass the availability of all the elements directly or indirectly to be considered in the rendering of a decision. See *Bankamerica Corporation* v. *Board of Governors*, 596 F.2d 1368, 1378 (9th Cir. 1979); *Lloyd* v. *Illinois Regional Transportation Authority*, 548 F. Sup. 575, 590 (N.D. Ill. 1982)." *Frank* v. *Streeter*, supra, 604.

The original trial was held on July 11, 1995. The post-trial briefs were submitted on or before September 26, 1995. The arguments presented within the defendants' brief necessitated the introduction of additional evidence. Accordingly, the trial court scheduled another hearing on June 6, 1996. Briefs regarding the supplemental hearing were filed on June 26, 1996, the completion date of this trial. For the trial court's judgment to comply with § 51-183b, it would have to have been issued prior to the end of October, 1996. In this case, the judgment

judgment, who has commenced the trial of any civil cause, shall have the power to continue such trial and shall render judgment not later than one hundred and twenty days from the completion date of the trial of such civil cause. The parties may waive the provisions of this section."

was rendered on September 26, 1996, well within the statutory time period and therefore was timely.

### III

The defendants next claim that the plaintiff violated General Statutes § 49-6d (a) , which provides: "Each creditor shall notify a consumer debtor . . . that such debtor: (1) May have legal interests that differ from the creditor's; (2) May not be required by the creditor to be represented by the creditor's attorney; (3) May waive the right to be represented by an attorney; (4) May direct any complaints concerning violations of this section to the Department of Banking."

The following facts are necessary for the resolution of this claim. On January 1, 1990, the defendants acknowledged receipt of a booklet titled "Settlement Costs and You." This book stated in pertinent part that "the buyer and seller may each retain an attorney to check the various documents and to represent them at all stages of the transaction including settlement." The book warned that if the attorney at the closing represented both the bank and the mortgagor, the attorney "may not fully represent your interests since, as closing agent, he would be representing the seller and other interests as well." Additionally, the defendants acknowledged receipt of a document titled "Important Notice, Please Read Carefully," which stated that the Scherbans' attorney must give the bank's attorney at least three days notice prior to closing. On April 12, 1990, one of the defendants, Jack Scherban, wrote a letter to the plaintiff stating the date on which he would like to schedule the closing and that the Scherbans' attorney for "this transaction [would be] David C. Erdos."

The defendants argue that because the bank did not send them a separate notice setting forth the provisions

of § 49-6d, the judgment of foreclosure is void. Because we conclude that there was no violation of § 49-6d, we need not reach that issue.

The legislative history of § 49-6d reveals that its purpose is to require banks to advise "the borrower that he does not have to use the creditor's attorney. . . . " 29 H.R. Proc., Pt. 13, 1986 Sess., p. 4857, remarks of Representative Gerard B. Patton. Here, the defendants were notified well in advance of the closing that they had the right to be represented by an attorney of their own choosing. Indeed, they were told that it was best if they had their own attorney. Further, the facts of this case show that the defendants did indeed retain an attorney who was present at the closing. Accordingly, the defendants' claim is without merit.

IV

The defendants next claim that the plaintiff's alleged violation of 15 U.S.C. § 1601 et seq., the Truth in Lending Act (TILA), constitutes a special defense to the underlying foreclosure. The trial court rejected this argument in determining that TILA is not applicable to the refinancing of a residential mortgage.

The crux of the defendants' claim under TILA is that the plaintiff incorrectly reported the recording fee as $50 rather than the actual fee of $40. Due to this error, the defendants seek attorney's fees pursuant to statute. Title 15 U.S.C. § 1638 (b) (2) sets forth the required disclosures a creditor must make prior to the extension of credit "[i]n the case of a residential mortgage transaction, as defined in section 103 (w) [15 U.S.C. § 1602 (w)]." Title 15 U.S.C. § 1602 (w) defines a residential mortgage transaction as one in which "a mortgage . . . is created or retained against the consumer's dwelling to *finance the acquisition or initial construction of such dwelling*." (Emphasis added.)

The note signed by the defendants in the amount of $400,000 was secured by the refinancing of an existing mortgage on the residence owned by Andrea Scherban. Under these facts, it is clear that the underlying financial transaction between these parties cannot be classified as the acquisition of a home or the financing of the construction of a new home. Therefore, the provisions of TILA do not apply.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.